## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| FRANKLIN DELANO RAGSDALE, | § § | |
| Plaintiff, | § § | Civil Action No. 3:06-CV-863-K (BH) |
| v. | § § | (Consolidated with No. 3:06-CV-870-D) |
| CLASSROOM TEACHERS OF DALLAS, et al., | § § § | |
| Defendants. | § | Pretrial Management |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to the District Court's *Standing Order of Reference*, filed August 11, 2006, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court are the following:

(1) *Motion for Summary Judgment of Defendants NEA-Dallas, Dale Kaiser, Kevin Lungwitz, and E.C. Walker* ("Mot."), filed June 27, 2007;

(2) *Brief of Defendants NEA-Dallas, Dale Kaiser, Kevin Lungwitz, and E.C. Walker in Support of their Motion for Summary Judgment* ("Mot Br."), filed June 27, 2007;

(3) *Appendix to Brief of Defendants NEA-Dallas, Dale Kaiser, Kevin Lungwitz, and E.C. Walker in Support of their Motion for Summary Judgment* ("Mot. App."), filed June 27, 2007;

(4) *Plaintiff's Compliance with Court's Orders of July 2, and July 5, 2007; Oppositions to: NEA Motion of June 27, 2007; and DISD Motion of July 2, 2007 - in Re-urgence of Plaintiff's Own Motion of November 9, 2006; to Dispose of Civil Causes* ("Resp."), filed July 9, 2007; and

(5) *Reply of Defendants NEA-Dallas, Dale Kaiser, Kevin Lungwitz, and E.C. Walker to Plaintiff's Apparent Response to Motion for Summary Judgment* ("Reply"), filed July 31, 2007.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court recommends that Defendants' *Motion for Summary Judgment* be **GRANTED.**

## I. BACKGROUND

Plaintiff Franklin Delano Ragsdale ("Plaintiff") worked for the Dallas Independent School District ("DISD") as a substitute teacher. On February 6, 2006, Troy Coleman, the associate superintendent of DISD human resources, sent Plaintiff a letter stating that he would be removed from the substitute teacher list due to the receipt of a complaint from one or more of DISD's campuses. (Mot. App. at 12). The letter also notified Plaintiff that as a substitute teacher, he was not entitled ordinarily to contest the personnel decision; however, if he felt that his termination was the result of discrimination or an action violating state or federal law, he could file a grievance. *Id*. The letter stated that any grievance must be filed within ten working days of receipt of the letter. *Id*.

On February 9, 2006, Plaintiff visited the National Education Association-Dallas ("NEA-Dallas") office to express concern regarding his employment status and about not being paid for work done for DISD. (*Id*. at 22, ¶6). Defendant NEA-Dallas is the local affiliate of the Texas State Teachers Association ("TSTA"), which is the state affiliate of the NEA; NEA, TSTA, and NEA-Dallas are private, non-profit corporations that serve as voluntary professional associations for public school employees. (*Id*. at 22, ¶2). Defendant Dale Kaiser, President of NEA-Dallas, explained to Plaintiff that substitute teachers were at-will employees but nevertheless offered to assist Plaintiff in resolving the matter. *Id*. Plaintiff completed a representation authorization form and an intake form detailing his complaints against DISD; these two forms were faxed to the Austin office of TSTA-NEA. (*Id*. at 4, ¶3; 8-11; 22, ¶7). Defendant Kaiser discussed with DISD personnel

the issue of whether Plaintiff had been paid for work performed, but he does not recall discussing the issue of removal from the substitute teacher list. (*Id*. at 22, ¶9). On or about February 10, 2006, Defendant Kaiser informed Plaintiff that NEA-Dallas would not be able to assist him due to his status as an at-will employee. (*Id*. at 22, ¶8).

Defendant Kevin Lungwitz, then General Counsel for TSTA-NEA, formally denied Plaintiff's request for representation in a letter dated February 16, 2006. (*Id*. at 4, ¶4; 14-15). The letter advised Plaintiff of his right to proceed on his own and of the short deadline for filing an employment grievance against DISD. *Id*. The letter also informed Plaintiff of his right to appeal the denial of representation to Defendant E.C. Walker, the Executive Director of TSTA, in writing within ten days of receipt of the February 16 letter. *Id*. Plaintiff appealed Defendant Lungwitz's decision to Defendant Walker in a letter sent via facsimile on February 17, 2006. (*Id*. at 26, ¶5). Defendant Walker responded via email and notified Plaintiff that he would review TSTA-NEA's decision. *Id*.

On February 21, 2006, before Defendant Walker issued a decision on Plaintiff's request for assistance, Defendant Lungwitz attempted to call Plaintiff to see if he had filed a grievance with DISD, and if not, to offer to have TSTA-NEA file a grievance on his behalf in order to meet the deadline imposed by DISD's February 6 letter to Plaintiff. (*Id*. 4, ¶5; 26, ¶5). Because Defendant Lungwitz was unable to reach Plaintiff and was concerned that the time to file a grievance was about to expire, he authorized funding for an outside attorney, Mr. Daniel Ortiz, to file a grievance with DISD on Plaintiff's behalf.[1] (*Id*. at 4, ¶5; 29, ¶3). Defendant Lungwitz took these actions despite his opinion that neither Defendant TSTA-NEA nor NEA-Dallas had any legal obligation to provide

---

[1] Plaintiff's request to join Mr. Ortiz as a party to this litigation was denied as untimely in this Court's March 13, 2007 *Order*.

Plaintiff with legal representation services or funding. (*Id*. at 6, ¶8). After receiving DISD's February 6 letter to Plaintiff and Plaintiff's February 9 request for representation, Mr. Ortiz prepared and filed a grievance with DISD on Plaintiff's behalf. (*Id*. at 4-5, ¶5; 29-30, ¶¶3, 4; 38-40). Mr. Ortiz also telephoned DISD and spoke with Luis Tamez to inform him that he would be representing Plaintiff and to inquire who would conduct the grievance conference. (*Id*. at 30-31, ¶7). Unbeknownst to both Defendant Lungwitz and Mr. Ortiz, Plaintiff filed his own grievance on the same day. (*Id*. at 5, ¶5; 30, ¶5; 47-50). Plaintiff alleges that he submitted his own "Pro Forma Grievance" to DISD and a copy to the NEA Defendants at 7:55 A.M. on February 21, 2006, but he provides no evidence of this transmission. (Resp. at 2).

On February 22, 2006, Defendant Lungwitz spoke with Plaintiff on the phone. (Mot. App. at 5, ¶6). Defendant Lungwitz informed Plaintiff that he had requested and authorized Mr. Ortiz to file a grievance on Plaintiff's behalf. *Id*. Defendant Lungwitz followed up his telephone conversation with a letter dated February 22, 2006, via overnight delivery, offering Plaintiff two options: (1) to accept the offer of limited representation made by TSTA; or (2) to accept $400, an amount in excess of the dues Plaintiff paid to NEA-Dallas and TSTA during his time as a substitute teacher with DISD. (*Id*. at 5, ¶6; 17-19). The letter requested Plaintiff to select an option and to inform TSTA-NEA of his choice on or before 5:00 P.M., February 27, 2006. (*Id*. at 5, ¶6; 19). The letter also informed Plaintiff that if he did not respond, both offers would be rescinded, and TSTA would not take any further action on Plaintiff's behalf. *Id*. Plaintiff did not accept either option presented by Defendant Lungwitz, nor did he appeal to Defendant Walker. (*Id*. at 5, ¶7; 26, ¶7).

On February 23, 2006, at 9:23 A.M., Mr. Ortiz emailed a copy of the grievance he filed with DISD on Plaintiff's behalf to Plaintiff. (*Id*. at 45). Plaintiff responded at 10:46 A.M. with a message

stating "*aqui le va*"[2] and attached his own "Pro Forma Grievance," dated February 21, 2006. (*Id*. at 47-50).

In an email from Plaintiff to Mr. Ortiz dated March 1, 2006, Plaintiff referred to Mr. Ortiz as "an unwelcome impostor, interloper intent of preventing [his] proceeding." (*Id*. 30, ¶7; 54). Later that same day, Plaintiff emailed Mr. Ortiz and requested that he "immediately cease and desist all apparent representation" as the representation cast Plaintiff in a "false light in his encounter with the Dallas Independent School District."[3] (*Id*. 30, ¶6; 52). Mr. Ortiz then sent a letter to Plaintiff informing him that he would no longer be representing him in his grievance with DISD; Plaintiff signed for this certified letter on March 3, 2006. (*Id*. at 30, ¶7; 56-57). Mr. Ortiz also notified Hermelindo Salinas, the DISD Employment Administrator, on March 1, 2006, that he was withdrawing as counsel for Plaintiff. (*Id*. at 30, ¶7; 59).

Defendant Lungwitz avers that he never discussed Plaintiff or Plaintiff's situation with anyone at DISD. (*Id*. at 6, ¶8). He further avers that has no knowledge of any conspiracy by anyone against Plaintiff, nor did he conspire with DISD or anyone else to deny Plaintiff his legal rights. *Id*. Defendant Kaiser avers that he has never been a party to any activity with DISD or its agents, or any other individual, to conspire against Plaintiff. (*Id*. at 22, ¶9). Defendant Kaiser also avers that he has no knowledge of any conspiracy by anyone against Plaintiff, nor did he conspire with DISD or anyone else to deny Plaintiff his legal rights. (*Id*. at 23, ¶¶10, 11). Defendant Walker avers that he never discussed Plaintiff or Plaintiff's situation with anyone at DISD. (*Id*. at 26, ¶8). He further

---

[2]"Aqui le va" is a Spanish phrase which translates to "here you go."

[3]Mr. Ortiz says that he received the email referring to him as an interloper after he received the email requesting that he withdraw. (Mot. App. at 30, ¶6). However, the time stamps from the two emails show that the email referring to him as an interloper was sent at 12:31 P.M. whereas the email requesting withdrawal was sent at 5:15 P.M. *See id*. at 52, 54.

avers that he has no knowledge of any conspiracy by anyone against Plaintiff, nor did he conspire with DISD or anyone else to deny Plaintiff his legal rights. (*Id*. at 26-27, ¶¶9, 10). Mr. Ortiz avers that he has no knowledge of any conspiracy by anyone against Plaintiff, nor did he conspire with DISD or anyone else to deny Plaintiff his legal rights. (*Id*. at 31, ¶8).

On May 12, 2006, Plaintiff filed a complaint against Defendants NEA-Dallas, Dale Kaiser, E.C. Walker, and Kevin Lungwitz (collectively, "NEA Defendants").[4] *Complaint*, *Ragsdale v. Classroom Teachers Assoc. of Dallas, et al.*, No. 3:06-CV-863 (N.D. Tex. filed May 12, 2006) (hereinafter, "Compl."). Plaintiff alleged that the NEA Defendants violated his civil rights by refusing to process his grievance. (*Id*. at 1). In particular, Plaintiff alleged that NEA Defendants violated his civil rights under the Emancipation Proclamation, the Thirteenth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. *Id*. On February 5, 2007, the District Court accepted this Court's recommendations and dismissed Plaintiff's claims under 42 U.S.C. § 1988, the Emancipation Proclamation, and the Thirteenth and Fourteenth Amendments to the United States Constitution. *Ragsdale v. Classroom Teachers of Dallas, et al.*, 2007 WL 426637, at *6 (N.D. Tex. Feb. 5, 2007).

On July 27, 2007, the NEA Defendants moved for summary judgment on Plaintiff's remaining claims arising under 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986. Plaintiff filed a response, but submitted no evidence, on July 9, 2007.[5] *See* Resp. NEA Defendants filed a reply on

---

[4]Plaintiff initially filed his complaint against the Classroom Teachers of Dallas, Dale Kaiser, and John Does 1-99. The Classroom Teacher Association of Dallas was the predecessor of NEA-Dallas. (Mot. Br. at 1). In a timely response to this Court's *Order* dated July 10, 2006, Plaintiff named the John Does as E.C. Walker and Kevin Lungwitz. *Identify the John Doe Defendants*, *Ragsdale v. Classroom Teachers of Dallas, et al.*, No. 3:06-CV-863, at 1 (N.D. Tex. filed July 20, 2006).

[5]The title of Plaintiff's response requests a reconsideration of a motion he filed on November 9, 2006. (*See* Resp.) ("In Re-urgence of Plaintiff's Own Motion of November 9, 2006: To Dispose of Civil Causes"). The District Court accepted this Court's recommendation to deny Plaintiff's November 9, 2006 motion because it reiterated a

July 31, 2007.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S.

---

request for summary judgment that was based solely on the erroneous belief that the Defendants failed to answer his complaint. (*Order*, November 21, 2006; *Findings, Conclusions, and Recommendations*, at 4, issued November 13, 2006). The District Court denied Plaintiff's request for reconsideration on November 29, 2006, and Plaintiff's appeal to the Fifth Circuit was dismissed for want of prosecution on March 21, 2007. (*See* docket entries #90 and 129). To the extent that Plaintiff's response requests reconsideration of previous rulings denying his motion for judgment, the Court recommends the motion be **DENIED** for the same reasons set forth in its previous recommendations.

at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### III. ANALYSIS

The NEA Defendants move for summary judgment on Plaintiff's claims that their alleged refusal to process his grievance against DISD violated his civil rights under 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986. (Mot.; *see Ragsdale*, 2007 WL 426637, at *6).

**A. 42 U.S.C. § 1981**

The NEA Defendants first move for summary judgment on Plaintiff's claim arising under 42 U.S.C. § 1981. (Mot. Br. at 9-10). Under the Civil Rights Act of 1866,

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981. "The term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and

conditions of the contractual relationship." *Id*. Section 1981 protects against "impairment by nongovernmental discrimination and impairment under color of State law." *Id.* A violation under § 1981 requires purposeful race-based discrimination. *See Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 390-91 (1982).

In the instant case, TSTA-NEA is a private, non-profit corporation that serves as a voluntary professional association for public school employees. (Mot. App. at 25, ¶2). Defendants have provided undisputed evidence that it is not a union and therefore does not owe a duty of fair representation to its members. *See Ragsdale*, 2007 WL 426637, at *3 (section 1981 provides a cause of action for the breach of a union's duty of fair representation) (citing *Air Line Pilots Assoc. Intern. v. O'Neill*, 499 U.S. 65, 67 (1991)). Despite having no legal obligation to do so, the NEA Defendants and Mr. Ortiz attempted to assist Plaintiff in resolving his complaint against DISD through informal means and by way of representation at an initial grievance hearing. (*See* Mot. App.) This assistance was rebuffed by Plaintiff, both in his failure to respond to Mr. Lungwitz's letter dated February 22 and in his request that Mr. Ortiz "immediately cease and desist all apparent representation," a request with which Mr. Ortiz immediately complied. (*Id*. at 5, ¶7; 26, ¶7; 30, ¶¶6,7; 52; 56-57). Even assuming such a duty existed and was breached, however, the NEA Defendants have identified an absence of evidence of racial animus in their dealings with Plaintiff. (Mot. Br. at 10).

The burden then shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there are genuine issues of material fact for trial. *Celotex*, 477 U.S. at 324. Plaintiff has not provided any evidence to document purposeful race-based discrimination by any of the NEA Defendants in their dealings with him; his claim under § 1981, a cause of action for

race-based discrimination, therefore fails. *See* 42 U.S.C. § 1981. Plaintiff also has not provided any evidence to show that the NEA Defendants owed him a contractual duty to provide legal representation services or funding for his grievance against DISD. Nor has he provided any controverting evidence to rebuff the NEA Defendants' sworn accounts that they made a reasonable effort to assist him despite having no legal obligation to do so.

In his response, Plaintiff alleges that the NEA Defendants substituted a grievance different from the one he provided to DISD. (Resp. at 2). However, the summary judgment evidence shows that the NEA Defendants were unaware of Plaintiff's own efforts to resolve his dispute on February 21, the day Plaintiff allegedly submitted his "Pro Forma Grievance" to DISD. (*Id.* at 5, ¶5; 30, ¶5). Mr. Ortiz did not receive a copy of the "Pro Forma Grievance" until February 23, two days after he filed the protective measure with DISD on Plaintiff's behalf. (*Id.* at 47-50). Upon receipt of Plaintiff's March 1, 2006 demand that he "immediately cease and desist all apparent representation," Mr. Ortiz complied and notified DISD that he would no longer represent Plaintiff in his grievance with DISD. (*Id.* 30, ¶¶6,7; 56-57; 59). Plaintiff has not identified evidence in the record to show how the actions of Mr. Ortiz or the NEA Defendants impaired his own efforts to resolve his dispute with DISD or purposefully discriminated against him.

Plaintiff's unsubstantiated assertions and conclusory allegations of race-based discrimination under 42 U.S.C. § 1981 do not satisfy his summary judgment burden. *Little*, 37 F.3d at 1075. Viewing the summary judgment evidence in the light most favorable to him as the non-movant, Plaintiff has not shown that the evidence is sufficient to support a resolution of the factual issue of discrimination under § 1981 in his favor. *Anderson*, 477 U.S. at 249. As such, summary judgment should be granted in favor of the NEA Defendants on this claim.

**B. 42 U.S.C. § 1985(3)**

The NEA Defendants also move for summary judgment on Plaintiff's complaint of a conspiracy in violation of 42 U.S.C. § 1985(3) in their alleged refusal to process a grievance against DISD. (Mot. Br. at 11). The elements of a § 1985(3) conspiracy claim are as follows:

> (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus.

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n. 12 (5th Cir. 2001) (citing *Wong v. Stripling*, 881 F.2d 200, 202-03 (5th Cir.1989)). According to Plaintiff, the NEA Defendants conspired with DISD employees when they refused to process his grievance because of racial animus. (*See* Compl. at 1).

The NEA Defendants proffer affidavits in which they deny that they were involved in a conspiracy to deny Plaintiff his legal rights or that they had knowledge of any such conspiracy by anyone against Plaintiff. (Mot. App. at 6, ¶8; 22, ¶¶9, 10, 11; 26-27, ¶¶9, 10; 31, ¶8). Defendants Lungwitz and Walker also deny ever discussing Plaintiff's situation with anyone at DISD. (*Id.* at 6, ¶8; 26, ¶8). Defendant Kaiser made an initial inquiry with DISD into whether Plaintiff had been paid for work performed, but he avers that he does not believe he discussed Plaintiff's removal from the list of eligible substitute teachers. (*Id.* at 22, ¶9). Mr. Ortiz filed a grievance on behalf of Plaintiff against DISD but withdrew his representation the day Plaintiff informed him that his services were not welcome. (*Id.* at 30-31, ¶¶4, 6,7; 37-45; 52-59). Through their affidavits, the NEA Defendants have provided evidence that they did not conspire against Plaintiff.

Having met their burden to show to provide evidence that there was no conspiracy, the burden shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Plaintiff alleges in his response that the specific act of conspiracy occurred on February 21, 2006, when Luis Tamez, the grievance administrator for DISD, allegedly substituted the grievance response from Mr. Ortiz for the one he provided directly to DISD. (Resp. at 2). However, as the NEA Defendants point out, Plaintiff provided no evidence to show that Mr. Tamez "substituted" the grievance by Mr. Ortiz in place his own. (Reply at 3). Moreover, it is apparent from the summary judgment evidence that Mr. Ortiz only filed his grievance on behalf of Plaintiff as a measure to preserve Plaintiff's right to appeal; once Plaintiff insisted that Mr. Ortiz withdraw as counsel, he complied. (Mot. App. at 51-59). Plaintiff provides no evidence to show that the NEA Defendants conspired against him; his conclusory, unsubstantiated allegations of a conspiracy are not sufficient to meet his burden at the summary judgment stage. *Little*, 37 F.3d at 1075.

Plaintiff also fails to submit any evidence establishing the second, fourth, and fifth elements of a conspiracy claim under § 1985(3). As discussed in Part III.A, *supra*, Plaintiff provided no evidence to show that the NEA Defendants owed him a contractual duty to provide legal services representation or funding. As such, he has not shown how he was deprived equal protection of the law. Plaintiff also has not shown how he was injured or how his property was deprived; he does not address how his status as an at-will employee of DISD gives him a right to due process or contract rights. (*See* Mot. App. at 14). Additionally, Plaintiff has not provided any evidence to suggest that the NEA Defendants' efforts to assist him in his grievance against DISD were motivated by any type of racial animus.

For these reasons, and viewing the summary judgment evidence in the light most favorable to the non-movant, Plaintiff has not shown that the evidence is sufficient to support a resolution of the factual issue of a conspiracy under § 1985(3) in his favor. *Anderson*, 477 U.S. at 249. The Court therefore recommends that summary judgment should be granted in favor of the NEA Defendants on this claim.

**C. 42 U.S.C. § 1983**

The NEA Defendants also move for summary judgment on Plaintiff's claim arising under 42 U.S.C. § 1983. (Mot. Br. at 10). Section 1983 provides a civil action for deprivation of rights against those who act "under color of state law." *See* 42 U.S.C. § 1983. To prevail on a claim under § 1983, a plaintiff must establish that: (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation was caused by a person or persons acting under color of state law. *Bass v. Parkwood Hospital*, 180 F.3d 234, 241 (5th Cir.1999). The "under color of state law" element of § 1983 excludes merely private conduct. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999). However, a non-state actor may be liable under § 1983 if it was a "willful participant in joint activity with the State or its agents" to deprive a claimant of a federal right. *Preister v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)). In order to hold a non-state actor liable under § 1983, the plaintiff must show: (1) the existence of a conspiracy that involves state action; and (2) the deprivation of civil rights in furtherance of a conspiracy by a party to the conspiracy. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990) (*receded from on other grounds by Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992)).

In the instant case, E.C. Walker, the Executive Director of TSTA, averred that NEA, TSTA,

and NEA-Dallas are private, non-profit corporations that serve as voluntary professional associations for public school employees. (Mot. App. at 25, ¶2). They are not state actors. *See id*. The threshold question, therefore, is whether the NEA Defendants conspired with state actor DISD to deprive Plaintiff of his constitutionally protected rights. *See Preister*, 354 F.3d at 420; *Pfannstiel*, 918 F.2d at 1187. As discussed in Part III.B, *supra*, there is no evidence that the NEA Defendants engaged in a conspiracy with any employee of DISD. (*See also* Mot. App. at 6, ¶8; 22, ¶¶9, 10, 11; 26-27, ¶¶9, 10; 31, ¶8). Nor is there any evidence to show that Plaintiff's civil rights were deprived since the NEA Defendants were under no obligation to provide legal representation services or funding. (*See* Part III.A). As such, the NEA Defendants cannot be liable under § 1983. *See Preister*, 354 F.3d at 420; *Pfannstiel*, 918 F.2d at 1187; *see also Ragsdale*, 2007 WL 426637, at *4 (declining to dismiss Plaintiff's § 1983 claim under the Rule 12(b)(6) standard because he sufficiently alleged a conspiracy under § 1985(3)). Since there is no genuine issue of material fact remaining for trial, the Court recommends that summary judgment be granted for the NEA Defendants on Plaintiff's § 1983 claim. *Celotex*, 477 U.S. at 323.

**D. 42 U.S.C. § 1986**

The NEA Defendants also move for summary judgment on Plaintiff's § 1986 claim. Section 1986 imposes liability on those who have knowledge of a conspiracy as described in § 1985 but neglect or refuse to prevent the conspiracy. 42 U.S.C. § 1986. As discussed in Part III.B, *supra*, there is no evidence that the NEA Defendants had knowledge of or engaged in a conspiracy with any employee of DISD. (Mot. App. at 6, ¶8; 22, ¶¶9, 10, 11; 26-27, ¶¶9, 10; 31, ¶8). Since the survival of a § 1986 claim depends upon the existence of a claim arising under § 1985, summary judgment should be granted in favor of the NEA Defendants on Plaintiff's § 1986 claim. *Galloway v. State*

*of Louisiana*, 817 F.2d 1154, 1159 n.2 (5th Cir. 1987) (affirming summary judgment on § 1985(3) claim and finding that "[i]n the absence of a claim under section 1985, [claimant] obviously cannot sustain a claim under section 1986.")

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the *Motion for Summary Judgment of Defendants NEA-Dallas, Dale Kaiser, Kevin Lungwitz, and E.C. Walker* be **GRANTED**. Plaintiff's claims arising under 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986 against these Defendants should be dismissed, with prejudice. To the extent that Plaintiff's response requests reconsideration of previous rulings denying his motion for judgment, the Court recommends such request be **DENIED**.

**SO RECOMMENDED** on this 11th day of September, 2007.

                                             *[signature]*
                                             **IRMA CARRILLO RAMIREZ**
                                             **UNITED STATES MAGISTRATE JUDGE**

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

 Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

                IRMA CARRILLO RAMIREZ
                UNITED STATES MAGISTRATE JUDGE